White, J.
 

 delivered the following opinion of the Court —
 
 [1]
 

 In the argument of the cause in this Court it is insisted that the Circuit Court erred in suffering the grant to be read in evidence to the jury.'
 

 It is further insisted that the Circuit Court erred in refusing to give the instructions to the jury which were required by the counsel of Leach.
 

 1. It is alleged that the grant ought not to have been read in evidence, because the declaration of the plaintiff states the beginning corner of the tract of land to be about two miles below the mouth of Harpeth; that the grant and testimony shows it to be ten miles below, and therefore the proof offered did not correspond with the allegations.
 

 If a man’s grant does not correctly describe the land which was surveyed for him, he ought, in his declaration, to describe the land which he wishes to recover truly; and in his proof he may establish the mistake and recover, notwithstanding the mistake in his grant. The patent is the first testimony which the plaintiff offered; and although there was a variance between the declaration and grant as to the number of miles the land was to be below the mouth of Harpeth, yet the Circuit Court, who had heard no evidence, could not then tell but that the declaration called for the true distance, and that there was a mistake in the grant as to the point, which would be explained by parol testimony. Hence the Circuit Court did right in permitting the grant to be read.
 

 But I will not rest my opinion on this principle alone. I will suppose the Circuit Court was applied to to reject the testimony after it had been all heard, and that it appeared that the real distance was ten, and not two miles as stated in the declaration. I would even then believe that the Court ought to have suffered the testimony to remain with the jury. The point of beginning is thus described: “ On the south side of Cumberland River, about two miles below the mouth of Harpeth, on two sycamores, John Boyd’s corner, one half mile above the mouth of Haw Creek.” In the grant, ten miles below is called for, and the parol testimony shows it to be really about ten miles, and about half a mile above the mouth of
 
 *191
 
 Haw Creek. The distance below the mouth of Harpeth is only a directory call to enable us to ascertain the object upon which the beginning is to be. The sycamores and Boyd’s corner are the locative calls, and are most important. The call, therefore, of “ two miles below the mouth of Harpeth ” being inconsistent with these calls, as well as the call for “ half a mile ” above the mouth of Haw Creek, should be rejected altogether, upon the principle that
 
 utile per inutile non vitialur.
 
 It seems to me unreasonable, on account of an unimportant slip of this kind, to turn a man round to a new suit, where justice does not require it, and where our Legislature have manifested such an aversion to doing so. They have made most liberal provision for amendments; and in the action of ejectment, after issue joined, courts are directed to disregard both the form and substance of the declaration.
 

 2. It is alleged that all those interested are not lessors of the plaintiff, and that the Circuit Court erred in not instructing the jury as Leach’s counsel wished.
 

 The grant, it appears, issued in 1787 to William Fletcher, who had died before the year 1782. He left two brothers, — Robert, the elder, and Thomas. They are now both dead. The lessor of the plaintiff is the only surviving child of Robert. The real question, then, is whether Thomas, the younger brother, or his children now standing in his place, are heirs of William Fletcher ? As the law stood when William Fletcher died, his elder brother alone was his heir. In 1784 the Legislature of North Carolina provided that all the sons should be heirs jointly, and in 1796 the Legislature of this State enacted that the sons and daughters should inherit jointly and have an equal interest.
 

 The Legislature of North Carolina, in 1782, when making provision for the officers and soldiers, say that where any of them have died in the ser-i vice, his heir or assignee shall be entitled to the same quantity of land his ancestor would have been entitled to if living. When we ascertain whom the Legislature intended by the word heir, the difficulty is at an end.
 

 The heir is he upon whom the law casts the estate of inheritánce immediately upon the death of the ancestor.
 

 ' As the law stood when William Fletcher died, Robert, his elder brother, was his heir in exclusion of Thomas. If William had then held a fee-simplp in this or any other land, the instant he died, the law, as it then stood, would have cast the estate upon Robert, if living; if not, upon his children. We cannot look to the date of the grant and ascertain who would have been heir if William had then died. This would have put it in the power of the officers employed in making the grant to fix the heir almost as they pleased. If it issued before 1784, the oldest brother would be heir; if between 1784 and 1796, all the brothers would be jointly interested; and if after 1796, then the sisters would have an equal interest with the
 
 *192
 
 brothers. The correct rule to ascertain who is heir is to look at the law as it stood when the ancestor died, and by that law determine who is heir. By so doing the character who is entitled under the act of 1782 cannot be mistaken.
 

 Note. — Judge White’s language is worthy of note: “ It seems to me unreasonable, ou account of an unimportant slip of this kind, to turn a man round to a new suit, where justice does not require it, and where our Legislature have manifested such an aversion to doing so.” — Ed.
 

 For these reasons it seems to me that no person whatever has any interest in this land but Esther Cooper. Of course there is no necessity to give any opinion whether tenants in common, or coparceners, ought each to demise to the plaintiff in ejectment.
 

 The judgment of the Circuit Court must be affirmed.
 

 [1]
 

 Original Note. — Absent Overton, J.